Shauck, J.
The petition does not call upon the defendants to show by what authority they assume to exercise the franchise or privilege in question; but, conceding that they are common carriers authorized to carry passengers on Main street in Dayton, it charges the carriage of freight and merchandise on said street for hire as the usurpation of a franchise not conferred. In any view quo warranto is a prerogative writ to be employed to shield the sovereignty of the state from invasion and to prevent the abuse of corporate powers. We have become familiar with its use to prevent combinations among artificial persons to stifle competition. It is quite obvious that it should not be resorted to at the instance of a competitor, for the purpose of preventing competition. ,
We have therefore to inquire whether the carriage of merchandise for hire under the conditions presented is the exercise of a franchise not conferred upon carrying companies of this character. Because the petition avers that the defendant companies have entered into an agreement for the conduct of the road on Main street, and impliedly avers, or at least permits the inference, that one of them is an electric interurban road, having its termini at Cincinnati and *281 Dayton, and the other an electric company owning the road apon Main street in Dayton, it will justify the judgment of. the circuit court if the right in question might result from any operating agreement or arrangement into which the said companies are authorized to enter. '
Counsel for the plaintiff in error urge as conclusive of the subject numerous texts and decisions in which street railroads are defined as carriers cf passengers. Uusually they have been so defined for the obvious reason that until recently they were exclusively engaged in the carriage of passengers; but the general definition cannot be material in view of recent legislation in which the term is applied to roads constructed upon highways, interurban as well as urban, the only requirement being that in construction and operation they shall be consistent with the former and ordinary use of such highways, and in which legislation provision is made for the carriage of merchandise. It is well known that it was in response to a general demand for increased traffic facilities between cities and the regions surrounding them that the act of May 17, 1894 (91 O. L., 285), which is now included in sections 3443-8 to 3443-13 of the Revised Statutes, was enacted. In that act railways of this character, wherever located, are called street railways. The second section authorized them upon obtaining the consent of the authorities controlling them, and of the owners of the property abutting on them, to occupy and use highways outside of cities and villages. The fourth section of the act (3143-11, R. S.) is as follows:
“Section 4. Such companies shall have power to lease, purchase or make traffic arrangements with any other street railroad company as to so much of *282 its tracks and other property as may. be necessary or desirable to enable them to enter or pass through any city or Tillage, upon the same terms and conditions applicable to other street railroads. And any existing street railroad company owning or operating a street railroad shall receive the cars, freight, packages or passengers of any other road, upon the same terms and conditions as they carry for the general public.”
Since the provisions of this section contain definite authority for the making of a traffic arrangement by which the defendants might have and exercise the powers which the petition alleges they are now exercising, the view taken of the petition in the circuit court is correct.

Judgment affirmed.

Burket, Spear and Davis, JJ., concur.